2011 OK CR 11

**Jose Alonso VELASCO, Petitioner,**

v.

**The OKLAHOMA DEPARTMENT OF CORRECTIONS, Respondent.**

**No. REC–2010–1011.**

Court of Criminal Appeals of Oklahoma.

March 30, 2011.

### ORDER AFFIRMING DENIAL OF PETITION FOR JUDICIAL REVIEW OF PRISON DISCIPLINARY PROCEEDINGS

¶ 1 The Petitioner, *pro se,* has appealed to this Court from an order, entered by the Honorable Noma D. Gurich, District Judge, denying his petition for judicial review of a prison disciplinary proceeding in Case No. CV–2010–753 in the District Court of Oklahoma County. Petitioner's petition sought judicial review of a prison disciplinary proceeding that had resulted in the revocation of 365 days of earned credits that Petitioner had accumulated. The District Court's review of the prison disciplinary proceeding, and this appeal, are authorized by 57 O.S.Supp.2010, § 564.1.

I.

¶ 2 The record in this matter shows that, on January 17, 2010, an *Incident/Staff Report* and a *Department of Corrections Offense Report* ("offense reports") were prepared by an Oklahoma Department of Corrections ("DOC") employee. (O.R.68, 69). The offense reports alleged that Petitioner had committed a DOC prison offense because the DOC employee "while doing a shakedown" of

Petitioner's cell "found a piece of rebar approx. about [sic] 7″ in length that was altered into a shank by grinding it to a point ... in [Petitioner's] right boot under his locker." (O.R.69).[1]

¶ 3 On January 19, 2010, an *Investigator's Report* was prepared. (O.R.71). The report included Petitioner's statement concerning the shank that "[i]t's not mine." *Id.* Petitioner asked to call two witnesses, but did not provide documentary evidence to the investigator. Id. Petitioner acknowledged that he had received written copies of the offense reports and other documents, and that he had been notified the disciplinary hearing would be conducted on January 20, 2010. (O.R.68, 71, 73).

¶ 4 The disciplinary hearing was actually conducted on January 22, 2010. One of Petitioner's witnesses provided a statement, but the other refused. (O.R.74, 75). The record does not reflect that Petitioner asked to present documentary evidence. On January 26, 2010, the written *Disciplinary Hearing Report* ("hearing report") was prepared, and sanctions, including revocation of 365 days of earned credits, were imposed. (O.R.77). The hearing report states that the evidence relied on for a finding of guilt was the DOC employee's offense reports, which stated in part that the sharpened rebar was found in Petitioner's right boot under his locker. *Id.* The hearing report's stated reason for the discipline imposed was to deter this type of future behavior. *Id.*

¶ 5 On February 10, 2010, Petitioner prepared an *Offender's Misconduct Appeal Form.* The form alleged that Petitioner was not permitted to present relevant documentary evidence. (O.R.78). Petitioner attached a written statement to the form that is undated, but both the appeal form and attached letter are date-stamped as received by the warden on February 17, 2010. (O.R.79). In the statement, Petitioner declared his innocence, and said he was sure another inmate who had been bothering him had placed the shank in his boot because his cell was accessible to any other inmate. *Id.* The statement

says Petitioner asked prison officers to get fingerprints off of the shank, and view recordings from the video camera right outside his cell to determine who put the shank in his boot. *Id.* On February 23, 2010, Petitioner's appeal was denied. (O.R., 80). The reviewer found that due process had not been violated, and that Petitioner was given an opportunity to present documentary evidence but failed to do so. *Id.*

¶ 6 On May 12, 2010, Petitioner presented a *Misconduct/Grievance Appeal Form to Administrative Review Authority* to further appeal his discipline to the prison director. (O.R.81). Petitioner claimed he had just discovered it was a denial of due process for prison officials to refuse to produce and review videotape from the camera outside his cell. *Id.* On May 14, 2010, a designee for the prison director denied Petitioner's appeal finding that Petitioner had been given the opportunity to present documentary evidence but failed to do so, and that a videotape of the incident does not exist. (O.R.83, 84).

¶ 7 Petitioner filed in the District Court a petition for judicial review of his prison disciplinary proceeding asserting three grounds for relief: (1) that his due process rights were violated because he was not provided a staff representative capable of properly interpreting for him and assisting him in presenting a defense (O.R.31–32); (2) that the evidence was not sufficient to support a finding of guilt and to meet the required due process standards for a prison disciplinary proceeding (O.R.33–38); and (3) that he was deprived of presenting exculpatory evidence when DOC would not consider a surveillance camera videotape during his disciplinary proceedings (O.R.39–41). The District Court addressed these claims by finding (1) that Petitioner's disciplinary proceeding complied with the state statutory and Constitutional standards for such proceedings; (2) that Petitioner's claims of not having an impartial hearing and being denied the opportunity to present documentary evidence are without merit because Petitioner did not request to present documentary evidence at the disci-

---

**1.** The Petitioner has not argued that possession of the shank would not violate DOC prison poli-    cies.

plinary hearing and because there is no videotape as the system is only a live monitor; (3) that claims of insufficient evidence and not being provided a staff representative are waived as they were not raised or exhausted in prison proceedings; and (4) that there is clearly some evidence and a reason for the hearing officer to find Petitioner guilty. (O.R.86–89).

¶ 8 In this appeal of the District Court's order denying relief on petition for judicial review, Petitioner asserts several, mostly related, allegations of error committed by the District Court. Petitioner's primary complaint is that the shank is not his, he did not put it in his boot, and he didn't know it was there; therefore, he is innocent of the alleged violation of prison rules. Some of the specific complaints in Petitioner's Petition and Brief include the hearing officer found him guilty without any evidence of actual or constructive possession of the shank; that he recalls telling the hearing examiner to look at the recording on a surveillance camera but his request was denied; that the respondent never offered any proof that the surveillance camera was only a monitoring device and did not record; and that his due process rights were violated because he was not provided a staff representative capable of properly interpreting for him and assisting him in presenting a defense. In addressing Petitioner's appeal, we find it necessary to clarify the only issues that may be asserted by Oklahoma inmates in a petition for judicial review of prison disciplinary proceedings, and the limited judicial review that may be conducted by Oklahoma Courts.

## II.

■ ¶ 9 In 1974, the United States Supreme Court held that, where the State of Nebraska had created the right to good time prison credits and itself recognized that deprivation of such credits is a sanction authorized for major misconduct, the statutory procedure for determining whether Nebraska inmates have committed such misconduct must observe certain minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The Supreme Court noted that "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *McDonnell,* 418 U.S. at 555, 94 S.Ct. 2963 (citing *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). The Supreme Court added, however, that a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. *McDonnell,* 418 U.S. at 555, 94 S.Ct. 2963. The Supreme Court held that the minimal due process in Nebraska prison disciplinary proceedings requires (1) that written notice of the charges must be given, no less than 24 hours before the hearing, to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense; (2) that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) that there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. *McDonnell,* 418 U.S. at 564–66, 94 S.Ct. 2963 (citing *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).

¶ 10 In 1985, the United States Supreme Court decided the issue of whether findings of a prison disciplinary board that result in the loss of good time credits must be supported by a certain amount of evidence in order to satisfy due process. *Superintendent, Mass. Correctional Institution at Walpole v. Hill,* 472 U.S. 445, 453, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). The Supreme Court again noted there was no need to decide whether due process required judicial review since the Massachusetts Supreme Judicial Court had interpreted state statute as providing for such review. *Hill,* 472 U.S. at 453, 105 S.Ct. 2768. The Supreme Court held that, where good time credits constitute a protected liberty interest, revocation of such credits does not comport with minimum requirements of procedural due process un-

less the findings of the prison disciplinary board are supported by some evidence in the record. *Hill,* 472 U.S. at 447, 454, 105 S.Ct. 2768.

¶ 11 In explaining the "some evidence" standard, the *Hill* Court stated "[t]his standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....'" *Hill,* 472 U.S. at 455, 105 S.Ct. 2768 (omission in original). The Court continued that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455–56, 105 S.Ct. 2768 (citation omitted). In concluding, the Court stated "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill,* 472 U.S. at 457, 105 S.Ct. 2768.[2]

¶ 12 The facts and arguments in *Hill* are similar to those in this matter. In *Hill,* a corrections official observed three inmates jogging away from another inmate who was bleeding from the mouth and had a swollen eye. Inmate Hill, and another disciplined inmate who had appealed, both complained that there was no evidence that an assault had occurred, but even if an assault did take place, there was no evidence that either of them had been involved. The Supreme Court found the evidence sufficient because the injured inmate "evidently had just been assaulted" and the "[g]uard saw three other inmates fleeing together down an enclosed walkway," and "[n]o other inmates were in the area." *Hill,* 472 U.S. at 456, 105 S.Ct. 2768.

¶ 13 The Supreme Judicial Court of Massachusetts had upheld relief for the inmates by finding "this evidence was constitutionally insufficient because it did not support an inference that more than one person had struck the victim or that either of the [inmates] was the assailant or otherwise participated in the assault." *Hill,* 472 U.S. at 456, 105 S.Ct. 2768. Nevertheless, the U.S. Supreme Court found the Massachusetts court's conclusion "misperceives the nature of the evidence required by the Due Process Clause." *Hill,* 472 U.S. at 456, 105 S.Ct. 2768. The Supreme Court concluded, "Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill,* 472 U.S. at 457, 105 S.Ct. 2768.

### III.

■ ¶ 14 In 2005, the Oklahoma Legislature enacted Section 564.1 of Title 57 of the Oklahoma Statutes, thus statutorily requiring judicial review of Oklahoma prison disciplinary proceedings.[3] Section 564.1 currently defines the role of Oklahoma courts as follows:

> D. The court shall only determine whether due process was provided by the revoking authority. In determining whether due process was provided, the court shall determine:
>
> 1. Whether written notice of the charge was provided to the inmate;

---

2. In further expounding on the evidentiary requirements for disciplinary hearings resulting in the revocation of time credits, the Supreme Court stated:

   The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction nor any other standard greater than some evidence applies in this context.
   *Hill,* 472 U.S. at 456, 105 S.Ct. 2768 (citations omitted).

3. This Court had previously found that a petition for writ of mandamus could be utilized by inmates to allege that minimum due process had been violated in prison disciplinary proceedings that resulted in the revocation of earned credits. *Waldon v. Evans,* 1993 OK CR 46, 861 P.2d 311.

2. Whether the inmate had a minimum of twenty-four (24) hours to prepare after notice of the charge;

3. Whether the inmate was provided an opportunity for a hearing by a prison employee not involved in bringing the charge;

4. Whether the inmate had the opportunity to present relevant documentary evidence;

5. Whether the inmate had the opportunity to call witnesses when doing so would not be hazardous to institutional safety or burden correctional goals;

6. Whether the inmate was provided a written statement as to the evidence relied on and the reasons for the discipline imposed; and

7. Whether any evidence existed in the record upon which the hearing officer could base a finding of guilt.

E. The judicial review as provided in this section shall not be an independent assessment of the credibility of any witness or a weighing of the evidence, and there shall be no right to an error free proceeding or to confront accusers. The only remedy to be provided, if the court finds due process was not provided, is an order to the Department to provide due process.

\*     \*     \*

G. Either party aggrieved by the final order of the district court on a petition for judicial review may only appeal the order to the Oklahoma Court of Criminal Appeals as set forth in the rules of such Court.

57 O.S.Supp.2010, §§ 564.1(D), (E), & (G).

¶ 15 A comparison of Section 564.1 with the U.S. Supreme Court's opinion in *McDonnell, supra,* reveals the statute contains all of those minimum due process requirements set forth by *McDonnell* for earned credit revocations. It therefore becomes obvious that Section 564.1 was intended to parallel the *McDonnell* decision and its progeny in ensuring that the Oklahoma Department of Corrections, when revoking earned credits, affords the level of due process required by the Federal Constitution. Section 564.1 also requires the hearing officer to provide the inmate with a written statement as to the evidence relied on and the reasons for the discipline imposed, which will allow Oklahoma courts to determine whether the "some evidence" standard enunciated by the U.S. Supreme Court in *Hill, supra,* has been satisfied. We hereby adopt the "some evidence" standard enunciated by the U.S. Supreme Court in *Hill, supra,* and find that it fully satisfies the due process clause of the Oklahoma Constitution, Okla. Const. art. II, § 7, and is the same as the "any evidence" standard employed at Section 564.1(D)(7).

¶ 16 The judicial review defined by Section 564.1 and required by due process is obviously very limited. In a petition for judicial review of disciplinary proceedings that result in the revocation of earned credits, the inmate is not allowed to argue and the court shall not consider any issue not listed in Section 564.1(D). If the inmate has not proven any of the items in Section 564.1(D) have been violated, and there is some evidence in the written statement prepared by the hearing officer to support the disciplinary findings, judicial review is at an end.

## IV.

¶ 17 In this matter, Petitioner has not established that any of the items listed in Section 564.1(D) were violated during his prison disciplinary proceeding. Petitioner raises one claim, concerning the failure to present the videotape recording from a surveillance camera at his disciplinary hearing, which would fall under subsections 4 and 5 of Section 564.1(D). Within the claim Petitioner complains that the DOC never offered proof that their surveillance system was only a monitoring device. First, the record in this matter does not reflect that Petitioner actually raised this claim before or during his disciplinary hearing. The *Investigator's Report,* prepared before the hearing, contains Petitioner's statement and his request to call two witnesses, but does not say anything about a surveillance camera or its tape. (O.R.71). Likewise, the hearing report does not mention a request for review of surveillance camera videotape. (O.R.77). This appeal record indicates that Petitioner's first request for review of surveillance camera

videotape is in the letter attached to Petitioner's *Offender's Misconduct Appeal Form,* which is dated February 10, 2010, after Petitioner's prison disciplinary hearing on January 22, 2010. Thus, Petitioner has not established that he timely and properly raised his claim concerning the surveillance camera. Moreover, Petitioner misapprehends the burden of proof in an action for judicial review such as that before the District Court. It is Petitioner's burden, as the moving party, to show the alleged video tape existed. *See* 57 O.S.Supp.2010, § 564.1(C) ("The petition shall assert that due process was not provided and *prove* which element of due process, relevant only to a prison administrative disciplinary proceeding, was not provided by the prison staff.") (emphasis added). Moreover, the record reveals that in its response to the Petition for Judicial Review, DOC provided the District Court with a statement from an assistant warden of the prison facility where the alleged offense occurred. The assistant warden's statement indicated that the facility's surveillance system had no recording capability and was only a monitor. (O.R.84.) Absent anything to the contrary except Petitioner's bare assertions, the District Court was justified in finding against Petitioner on this issue.

¶ 18 Petitioner's pleadings clearly show he wants to challenge the sufficiency of the evidence used to impose his prison discipline. However, such a challenge is not authorized by the constitution, *Hill,* 472 U.S. at 455–56, 105 S.Ct. 2768, and in fact is statutorily prohibited. 57 O.S.Supp.2010, § 564.1(E) (judicial review shall not be an independent assessment of the credibility of any witness or a weighing of the evidence). The only requirement with regard to the evidence is that there is some evidence in the record upon which the hearing officer could base a finding of guilt. 57 O.S.Supp.2010, § 564.1(D)(7); *Hill,* 472 U.S. at 455–56, 105 S.Ct. 2768.

¶ 19 In this matter, the hearing report from Petitioner's disciplinary hearing states that the evidence relied on for a finding of guilt was a piece of rebar sharpened at one end that was found in Petitioner's right boot under his locker. (O.R.77). Clearly, this record contains 'some evidence' that could support the decision reached at the disciplinary hearing to revoke good time credits. Judicial review is at an end.

¶ 20 **IT IS THEREFORE THE ORDER OF THIS COURT** that the final judgment entered on September 21, 2010, in the District Court of Oklahoma County, Case No. CV–2010–753, denying Petitioner relief under 57 O.S.Supp.2005, § 564.1, is **AFFIRMED.**

¶ 21 Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2011), **MANDATE IS ORDERED ISSUED** upon the filing of this decision.

¶ 22 **IT IS SO ORDERED.**

/s/ Arlene Johnson
ARLENE JOHNSON, Presiding Judge

/s/ David B. Lewis
DAVID B. LEWIS, Vice Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Clancy Smith
CLANCY SMITH, Judge